**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


JUAN MORALES,                  :
                               :    Civil Action No. 03-4700 (JBS)
          Petitioner,          :
                               :
     v.                        :    OPINION
                               :
WARDEN C.J. DeROSA,            :
                               :
          Respondent.          :
```

**APPEARANCES:**

Petitioner pro se                Counsel for Respondent
Juan Morales                     John Andrew Ruymann
#11782-050                       Assistant U.S. Attorney
F.C.I. Fort Dix                  402 East State Street
Bldg. 5803                       Room 430
P.O. Box 7000                    Trenton, NJ 08608
Fort Dix, NJ

**SIMANDLE**, District Judge

Petitioner Juan Morales, a prisoner confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] challenging the results of a prison disciplinary proceeding.  The sole respondent is Warden C.J. DeRosa.

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:
> (a) Writs of habeas corpus may be granted by the ... district courts ... within their respective jurisdictions ...
> (c) The writ of habeas corpus shall not extend to a prisoner unless- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

For the reasons set forth below, the Petition will be denied.

## I. BACKGROUND

Petitioner is presently confined pursuant to a conviction and sentence issued in the U.S. District Court for the District of New Jersey.

On November 16, 2002, Petitioner submitted a urine sample for drug testing. The Chain of Custody form signed by Petitioner, Register Number 11782-050, indicated Specimen Number B00902296. The Chain of Custody form included the following certification: "I certify that the specimen accompanying this form is my own and that I provided it to the collector. Further, I certify that the specimen was sealed in my presence and that the information on this form and label is correct." (Answer, Hebbon Decl., Ex. 1d, Chain of Custody form.)

On November 21, 2002, Petitioner was issued an Incident Report, Number 1049453, charging him with the unauthorized use of narcotics, a violation of Offense Code 112. See 28 C.F.R. § 541.13 (detailing Offense Codes). The Incident Report stated:

> On 11/21/02 at approximately 10:00 am I received written notification from National Toxicology which stated that specimen number B00643831 had tested positive for Opiates/Morphine. Specimen number B00902296 was assigned to the urine sample for inmate Morales, Juan # 11782-050 and provided on 11-16-2002 at 5:43pm to officer Duncan. Health Services was notified and informed this office that the medication was not prescribed to inmate Morales, Juan # 03147-036 which resulted in a positive test for Opiates/Morphine.

2

(Answer, Hebbon Decl., Ex. 1c, Incident Report No. 1049453 (emphasis added).) The Incident Report refers to two different specimen numbers and two different register numbers.

The Incident Report was based upon a laboratory report from National Toxicology Laboratories, which reflects a positive result for "Opiates - Morphine" for Specimen Number B00902296. (Answer, Hebbon Decl., Ex. 1e, National Toxicology Laboratories, Inc. Laboratory Report.)

On November 22, 2002, the United Discipline Committee ("UDC") referred the incident report to the Discipline Hearing Officer ("DHO") for further hearing. On December 12, 2002, a DHO hearing was convened. During that hearing, it was noted that two specimen identification numbers were included on the incident report. Therefore, the DHO returned the report for additional investigation/re-write.

On December 13, 2002, a revised incident report was issued to Petitioner charging him with the same prohibited act as the original incident report. (Answer, Hebbon Decl., Ex. 1f, Revised Incident Report.) While the revised incident report corrected the erroneous reference to specimen number B00643831, it did not correct the erroneous reference to two different register numbers.

The DHO hearing reconvened on December 19, 2002. The DHO determined that Petitioner had committed the prohibited act

charged and imposed various sanctions, including the disallowance of 54 days good time credits.  (Answer, Hebbon Decl., Ex. 1g, DHO Report.)  The DHO Report reflects that Petitioner denied the charge and stated that he did not use any drugs.  In finding that Petitioner had committed the prohibited acts, the DHO relied upon the Incident Report, the Chain of Custody form, the Laboratory Report, and Petitioner's institutional history of unauthorized use of narcotics.

Petitioner has exhausted his administrative remedies for challenging the DHO Report and sanctions.

Here, Petitioner contends that he was denied due process because the DHO was belligerent at the hearing, because the specimen that tested positive was not assigned to him (as evidenced by the typographical discrepancies in the Incident Report), and because the sanctions imposed are severe.

Respondent has answered.  Petitioner has submitted a reply in support of his Petition, and this matter is ready for disposition.

## II.  LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994).  A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified."  See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S.

District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III.  ANALYSIS

A.  Jurisdiction

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997).  See also Wilkinson v. Dotson, 125 S.Ct. 1242 (2005).  Habeas corpus is an appropriate mechanism, also, for a federal prisoner to challenge the execution of his sentence.  See Coady v. Vaughn, 251 F.3d 480, 485-86 (3d Cir.

2001); Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990). In addition, where a prisoner seeks a "quantum change" in the level of custody, for example, where a prisoner claims to be entitled to probation or bond or parole, habeas is the appropriate form of action. See, e.g., Graham v. Broglin, 922 F.2d 379 (7th Cir. 1991) and cases cited therein.

To the extent a prisoner challenges sanctions affecting his conditions of confinement, however, such claims must be raised by way of a civil rights action. See Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002). Where a favorable outcome necessarily would imply the invalidity of the length of a prisoner's sentence, such claims do not accrue until the sanction has been invalidated through reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. See Heck v. Humphrey, 512 U.S. 477 (1994). Thus, this Court can award no relief related to those sanctions that do not affect the length of Petitioner's sentence.

B.   Petitioner's Claims

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law. See Wolff v. McDonnell, 418

U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ... In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or from state or federal law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[2] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure

---

[2] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison.  Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct.  See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

7

that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

Thus, a prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and presented documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals,[3] and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action.  Wolff, 418 U.S. at 564-66.

---

[3] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing.  To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing. See Ponte v. Real, 471 U.S. 491 (1985).  "{P]rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals.  ...  [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners." Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985).

Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. Id. at 569-70. Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member. Id. at 570.

Finally, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985).[4]

Here, Petitioner challenges the independence of the DHO and the sufficiency of the evidence. Petitioner does not allege that the DHO had any personal interest in the matter. Any perceived hostility based on intemperate remarks during the hearing is not sufficient to establish that the DHO was not impartial. In addition, the signed and certified Chain of Custody form, which assigned Specimen Number B00902296 to Petitioner's urine

---

[4] The due process requirements of Wolff, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq. See, e.g., 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

specimen, coupled with the positive Laboratory Report for Specimen Number B00902296, are sufficient evidence to support the DHO's finding that Petitioner committed the prohibited act. There is no inconsistency in the Chain of Custody form or the Laboratory Report, but there is merely a typographical error in the Incident Report.  Finally, the sanctions imposed, while they may be harsh, are within the sanctions allowed for such a violation, and Petitioner does not argue otherwise.

Petitioner has failed to establish any due process violation in connection with the challenged DHO Report and associated sanctions.

## IV.   CONCLUSION

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.

**s/ Jerome B. Simandle**
Jerome B. Simandle
United States District Judge

Dated:   September 12, 2005